UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| B.B. (minor),<br>Plaintiff,<br><br>v.<br><br>STAN A. EDINGTON, in his individual capacity;<br>SHERIFF DUANE M. WALDERA OF JACKSON COUNTY, in his official capacity;<br>JACKSON COUNTY, WISCONSIN,<br>Defendants. | Case No. _____ |

CIVIL RIGHTS COMPLAINT

JURY TRIAL DEMANDED

I. INTRODUCTION

1. This is a civil rights action under 42 U.S.C. § 1983 arising from the unlawful use of deadly force by Defendant Stan A. Edington ("Edington"), a Sergeant with the Jackson County Sheriff's Office, who fired approximately twenty-two (22) rounds at Plaintiff during a late-night encounter, striking Plaintiff in the neck and causing catastrophic spinal cord injury and permanent paralysis from the neck down. Plaintiff was unarmed at all relevant times.

2. The shooting occurred in the early morning hours of May 12, 2025, on Sand Prairie Road North in the Township of Hixton, Jackson County, Wisconsin. Defendant Edington fired multiple rounds at Plaintiff during a continuous use-of-force sequence, including an initial volley of shots followed by additional shots after reloading, all of which were objectively unreasonable under the circumstances.

3. Defendants escalated what was known to be a juvenile welfare and intoxication situation into a high-speed pursuit and then into an unjustified deadly-force event.

4. Plaintiff did not pose an objectively reasonable immediate threat of death or great bodily harm to Defendant Edington or anyone else at the time deadly force was used. Plaintiff was unarmed. At no time did Plaintiff use or attempt to use the vehicle as a weapon in a manner creating an objectively reasonable imminent threat of serious harm. The use of deadly force was objectively unreasonable and unconstitutional.

5. Defendant Jackson County is liable under *Monell v. Department of Social Services* because Plaintiff's injuries were caused by unconstitutional policies, customs, failures to train, and deliberate indifference, including failures concerning shootings at moving vehicles, supervisory control, juvenile crisis response, and use-of-force accountability.

6. Plaintiff seeks compensatory damages, punitive damages against Defendant Edington, attorneys' fees, costs, and all other appropriate relief.

## II. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States.

8. This Court has supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367.

9. Venue is proper in the Western District of Wisconsin under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Jackson County, Wisconsin.

## III. PARTIES

10. Plaintiff B.B. is a minor and a resident of Wisconsin.

11. Defendant Stan A. Edington was at all relevant times a Sergeant with the Jackson County Sheriff's Office acting under color of state law. He is sued in his individual capacity.

12. Defendant Sheriff Duane M. Waldera of Jackson County is sued in his official capacity as the final policymaker for the Jackson County Sheriff's Office.

13. Defendant Jackson County, Wisconsin is a municipal entity responsible for the policies, customs, training, supervision, and discipline of the Jackson County Sheriff's Office.

## IV. FACTUAL ALLEGATIONS

14. On May 11, 2025, Jackson County deputies had call(s) for service involving Plaintiff, who was known to law enforcement as intoxicated and emotionally distressed.

15. Late that evening, Plaintiff's mother contacted law enforcement reporting that Plaintiff had left the residence in her vehicle without permission.

16. Deputies located the vehicle and initiated a pursuit.

17. Deputies and supervisors knew Plaintiff was the same individual involved in the earlier welfare-related contacts that evening.

18. During the pursuit, deputies reported that the vehicle reached elevated speeds before entering rural roads.

19. In the early morning hours of May 12, 2025, Plaintiff's vehicle left the roadway and came to rest off the roadway near a tree line on Sand Prairie Road North.

20. Multiple law enforcement vehicles converged on the location.

21. Defendant Edington arrived in an unmarked SUV and positioned behind another squad.

22. At approximately 1:02 a.m., Defendant Edington's body-worn camera activated.

23. At approximately 1:06 a.m., Defendant Edington exited his vehicle and moved toward the area of Plaintiff's vehicle.

24. Moments later, Defendant Edington raised his handgun and began firing into the rear of Plaintiff's vehicle. Prior to the shooting, Plaintiff's vehicle briefly moved in reverse; however, Plaintiff did not drive toward officers in a manner creating an objectively reasonable imminent threat of serious physical harm. Defendant Edington's discharge of his firearm constituted a single continuous use of deadly force rather than distinct or separable events.

25. Defendant Edington fired approximately eighteen (18) rounds in rapid succession.

26. Plaintiff's vehicle continued moving slowly forward and away from officers. The vehicle's horn began sounding continuously.

27. Defendant Edington ceased firing briefly and reloaded his firearm.

28. Despite the horn sounding continuously (suggesting possible driver incapacitation) and despite the vehicle moving forward and away, Defendant Edington fired an additional four (4) rounds while advancing toward the vehicle. The continuously sounding horn, combined with the vehicle's movement away from officers, further reinforced that Plaintiff did not pose an objectively reasonable immediate threat.

29. Law enforcement later recovered approximately twenty-two spent shell casings from the scene.

30. Plaintiff was struck by a bullet in the posterior neck. The precise timing of the shot or shots causing Plaintiff's catastrophic injury is not fully known at this stage.

Plaintiff alleges that the entire sequence of deadly force was excessive and that the shots fired were a direct and proximate cause of Plaintiff's injuries.

31. Plaintiff immediately lost movement in his extremities.

32. Medical records confirmed a catastrophic cervical spinal cord injury.

33. Plaintiff was airlifted from the scene in critical condition.

34. Plaintiff is permanently paralyzed from the neck down and faces lifelong medical and personal care needs.

35. As Plaintiff lay gravely wounded, he asked officers, "Why did you shoot me?"

36. Defendant Edington has been criminally charged in Wisconsin state court for recklessly causing great bodily harm in connection with this shooting (Second Degree Reckless Injury).

## V. CLAIMS FOR RELIEF

**COUNT I – Excessive Force – 42 U.S.C. § 1983 – Against Defendant Edington**

37. Defendant Edington seized Plaintiff within the meaning of the Fourth Amendment.

38. Defendant Edington used deadly force.

39. Plaintiff did not pose an objectively reasonable immediate threat of death or great bodily harm.

40. Defendant Edington fired multiple rounds during the continuous use of deadly force, including an initial volley and additional rounds after reloading, none of which were objectively reasonable under the circumstances.

41. The use of deadly force was objectively unreasonable and violated clearly established Fourth Amendment principles governing the use of deadly force against non-threatening individuals.

42. Defendant Edington is not entitled to qualified immunity.

## COUNT II – Municipal Liability (Monell) – 42 U.S.C. § 1983 – Against Jackson County and Sheriff

43. Jackson County maintained unconstitutional customs, policies, and practices that were the moving force behind Plaintiff's injuries.

44. Jackson County failed to implement and enforce constitutionally adequate policies governing shootings at moving vehicles. Such policies should have been in place prevent officers from acting in the same manner that Officer Eddington acted under these circumstances.

45. Jackson County failed to adequately train deputies on the constitutional limits of deadly force in vehicle-related encounters.

46. Jackson County failed to train deputies on juvenile crisis intervention and de-escalation.

47. Jackson County failed to supervise, discipline, and control deputies who engage in dangerous use-of-force conduct. The risks associated with shooting at moving vehicles were well known within law enforcement training and national standards, yet Defendants failed to adopt or enforce constitutionally adequate restrictions.

48. All of these failures amounted to deliberate indifference to the constitutional rights of Plaintiff, and resulted in him sustaining catastrophic injuries.

**COUNT III – Wisconsin State Law Claims – Against Defendant Edington and Jackson County**

49. Defendant Edington intentionally and/or recklessly discharged his firearm at Plaintiff.

50. Defendant Edington's conduct constituted assault, battery, negligence, and recklessness under Wisconsin law and was willful, malicious, and undertaken with reckless disregard for Plaintiff's rights.

51. Plaintiff suffered catastrophic injuries as a direct and proximate result.

## VI. DAMAGES

52. Plaintiff has suffered permanent paralysis, pain, disability, emotional distress, loss of enjoyment of life, and massive economic loss.

53. Defendant Edington's conduct was willful and malicious, entitling Plaintiff to punitive damages.

## VII. JURY DEMAND

54. Plaintiff demands a trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against Defendants, awarding compensatory damages, punitive damages, attorneys' fees and costs, pre- and post-judgment interest, and all other relief the Court deems just and equitable.

**MAGNA LAW FIRM**

Dated: February 10, 2026

By:/s/ Oliver E. Nelson, III
Oliver E. Nelson, III
MN Bar No. 0347280
2915 Wayzata Boulevard
Minneapolis, MN 55405
Tel: 763-438-3032
Email: onelson@magnalaw.net

**ATTORNEY FOR PLAINTIFF**